**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

HUTSON L. BURKS,                               )
ADC # 87853                                    )
    Petitioner,                            )        **Case No. 5:13-CV-00390 BSM-JTK**
v.                                             )
                                               )
RAY HOBBS, Director,                           )
Arkansas Department of Correction              )
    Respondent.                            )

<u>**PROPOSED FINDINGS AND RECOMMENDATIONS**</u>

**Instructions**

      The following recommended disposition has been sent to United States District Court Chief Judge Brian S. Miller.   Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

      If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## Disposition

BEFORE THE COURT is the Petition for Writ of Habeas Corpus filed by Hutson L. Burks. (Doc. No. 2).  A response was filed by Respondent Ray Hobbs on April 1, 2014. (Doc. No. 8).  Petitioner filed a reply on April 28, 2014. (Doc. No. 10).  After reviewing the parties' briefing and the available evidence, the Court finds that Petitioner's claims should be DISMISSED.  The Court also finds that Petitioner's Motion for Leave to Amend should be DENIED. (Doc. No. 11).

## Background

On November 24, 2006, two employees of the Metropolitan Bank at 1400 Arch Street, Little Rock were robbed of more than $60,000 when they were loading money into an ATM. Both employees positively identified Petitioner as the robber at trial, and one of the employees identified the car used by Petitioner and his female driver during the robbery.  The employees

also testified that the robber wore a dreadlock wig and that the driver hit a drop-off box with the passenger-side door.

Eddie McClendon, a fellow inmate in the Pulaski County Jail that had known Petitioner for 17 years, testified that Petitioner approached him and told him that he had robbed a bank "off of Arch" while an ATM was being filled and that he had gotten around $81,000.  Petitioner mentioned that he had been spending the money and that he had purchased a Lincoln Town Car. McClendon also testified that Petitioner said he wore a dreadlock wig during the robbery and that he had a getaway driver.

Emma Mickles testified that she knew Petitioner and that her son's grandmother, Roxanne Walker, was also Petitioner's aunt.  She also knew Stella Hill, Walker's sister and Petitioner's other aunt.  Mickles testified that when Hill and Petitioner left together on the date of the robbery, Petitioner was wearing the same clothes described by the bank employees, and one of her large wigs was missing.  When they returned, Petitioner pulled out a wad of money. Although he initially refused to say where the money came from, he later told her that "he hit a lick at Metropolitan."

Petitioner subsequently departed for Chicago, and Mickles wrote him to tell him that she was going to go to the police because she was angry with Hill.  Petitioner wrote back to her asking her not to go to the police and not to let her anger towards them (Hill and Walker) get Petitioner a life sentence.  He also referred to his "stash" of money.  An expert testified that Petitioner's DNA was found as a "major contributor" on the envelope of the letter.  Petitioner was stopped in Illinois while driving a Lincoln Town Car on December 4, 2006.  He was arrested after giving a false name to the officer and was eventually transported back to Pulaski County.

**Procedural History**

Petitioner was convicted by a Pulaski County jury of aggravated robbery and theft of property on August 21, 2008, and was sentenced to concurrent terms of 27 years' imprisonment and 18 years' imprisonment, respectively.   He subsequently appealed his conviction to the Arkansas Court of Appeals, arguing that the trial court erred by denying his motion to suppress Mickles's testimony and his motion for a mistrial.   The court affirmed his convictions on May 27, 2009. *Burks v. State*, 2009 Ark. App. 444.   His petition for review by the Arkansas Supreme Court was denied on December 3, 2009, as was his petition for rehearing on December 16, 2009. *Burks v. State*, 2009 Ark. 598, 359 S.W.3d 402 (2009).   He sought certiorari from the United States Supreme Court on March 18, 2010, but his petition was denied on June 4, 2010. *Burks v. Arkansas*, 560 U.S. 942 (2010).

Petitioner subsequently sought postconviction relief pursuant to Ark. R. Crim. P. 37.1, but there appears to be some confusion regarding the timing of his attempts.   He alleges that his first attempt occurred on or around February 6, 2010, but that the Pulaski County Clerk's office failed to file his petition or take any action.   He inquired into the status of his petition on March 15, 2010, and on March 24, 2010, the clerk's office responded with an extremely vague document that seemed to indicate that it required a case number to answer his question. Petitioner took this as an instruction to refile his petition, so he filed a nearly identical petition on or around March 29, 2010.   Regardless of when Petitioner actually sent his petitions, it is apparent from a review of the Pulaski County Court docket sheet that the first petition, which was notarized on February 6, 2010, was filed by the clerk on March 2, 2010.   His second petition, which was notarized on March 29, 2010, was not filed by the clerk until April 12, 2010.

His Rule 37 petitions sought relief based on the following grounds: 1) he was denied the

right to an attorney because one was not appointed until nine months after his arrest; 2) his arrest was unlawful due to lack of evidence; 3) his right to a speedy trial was violated; 4) his due process rights were violated because the employees first identified him in the courtroom; 5) there was prosecutorial misconduct because the prosecutor did not have a handwriting analyst review the letter; 6) he was denied a fair and impartial trial; 7) the prosecutor engaged in misconduct by using a writ of error coram nobis to reduce Mickle's sentence after she testified; 8) he was denied due process when police failed to compare a third set of fingerprints that were on the cash canisters; and 9) he received ineffective assistance because counsel did not object to prior bad acts testimony and did not request a mistrial based on the in-court identification of Petitioner. His petition was denied on December 20, 2010.  He subsequently appealed that decision to the Arkansas Supreme Court, but it was dismissed on May 9, 2013. *Burks v. State*, 2013 Ark. 198. The court's decision did not reach the merits of Petitioner's claims because it was based on a finding that the lower court lacked jurisdiction to hear his Rule 37 petition.  The court explained that this was because Petitioner's April 12, 2010 petition was filed more than sixty days after the final direct appeal mandate on January 28, 2010.  The Court made no mention of the previous petition.

On December 29, 2010, Petitioner filed a petition to reinvest jurisdiction in the trial court so that it could consider a writ of error coram nobis, but it was denied on April 21, 2011. *Burks v. State*, 2011 Ark. 173.  A second such petition was filed on March 21, 2013, but it was denied on May 2, 2013. *Burks v. State*, 2013 Ark. 188.  A motion for reconsideration was denied on June 20, 2013. *Burks v. State*, 2013 Ark. 274.  A third petition was filed on June 7, 2013, but it was denied on July 25, 2013.

On September 24, 2012, Petitioner also filed a state habeas petition alleging prosecutorial

misconduct and denial of due process through suggestive identification, but it was summarily denied on May 10, 2013.

Petitioner filed a petition for federal habeas relief on November 24, 2010, but his petition was voluntarily dismissed on July 26, 2011, because his Rule 37 petition was still pending.  A second such petition was filed on February 15, 2013, but it was later dismissed on November 26, 2013, because he failed to pay the filing fee.  The current petition was filed on December 23, 2013.

## Discussion

Petitioner argues he is entitled to relief pursuant to 28 U.S.C. § 2254 because 1) his due process and equal protection rights were violated when the trial court failed to protect him from the prosecution's misuse of error coram nobis to procure Mickels's testimony; 2) his due process rights were violated when unnecessarily suggestive pre-trial identification was used; 3) his requests for counsel were ignored for ten months; 4) the trial court abused its discretion when it failed to grant his motion to suppress Mickles's testimony; 5) his speedy trial rights were violated; 6) his arrest was unlawful due to lack of evidence; 7) counsel was ineffective for ten reasons; and 8) the prosecutor engaged in misconduct through his misuse of error coram nobis to elicit testimony.  Respondent contends that Petitioner's claims fail because they are barred by the statute of limitations, procedurally defaulted, and without merit.  Petitioner has also filed a motion to amend (Doc. No. 11), but that motion is DENIED as futile.

## I.     Statute of Limitations

Section 2244 requires that state habeas petitioners file their petitions within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  That date was June

4, 2010, the date certiorari was denied.  Respondent argues that Petitioner's Rule 37 petition should not toll the statute of limitations because it was untimely.  *See* 28 U.S.C. § 2244(d)(2); *Evans v. Chavis*, 546 U.S. 189, 191 (2006) ("The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law."); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

However, the Court declines to adopt Respondent's reasoning because the Arkansas Supreme Court's decision appears to be based on oversight and clerical error.  It made no mention of his first, timely petition and it made no findings regarding the clerk's office alleged delays in filing both of his petitions.  It is unclear what Petitioner needed to have done to correct his first petition (if anything), and the Arkansas Supreme Court offered no guidance regarding why the sixty-day limitations period continued to run after it was filed.  Thus, the Court finds that the statute of limitations did not begin to run until May 9, 2013 (the date his Rule 37 proceedings ended).  It continued to run for 29 days until he filed his third motion to reinvest jurisdiction on June 7, 2013.[1]  It began again on July 25, 2013, and continued to run for another 151 days until he filed the current petition on December 23, 2013.  Thus, only 180 days expired for statute of limitations purposes.  This also means that Petitioner's requested amendments are timely.

## II.    Procedural Default

Respondent contends that Petitioner's claims are procedurally barred because he failed to present them to the state courts.  A habeas petitioner who cannot present his federal claims in state court due to untimeliness or some other state procedural hurdle meets the technical

---

[1] This assumes for the sake of argument that a third, identical motion would be considered properly filed for tolling purposes.  His petition would have been timely regardless.

requirements for exhaustion because there are no longer any state remedies that are available to him. *Grass v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  "However, that petitioner's procedural default may constitute an 'independent and adequate state ground' barring federal habeas relief absent a showing of either cause and prejudice or actual innocence." *Id.* (internal citations omitted).  "[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.,* whether he has fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  To meet this fair presentation requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.  "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848).

Although he raised it during his direct review, Petitioner's first claim[2] is procedurally defaulted because he failed to preserve it for review at trial and failed to properly develop the argument on appeal.  Petitioner's sixth claim[3] is also defaulted because it does not appear that he raised it during his direct or postconviction review.

The Court does not believe the remainder of Petitioner's claims should be treated as procedurally defaulted because he was unable to complete one full round of Arkansas's established review process due to an error made by Arkansas's highest court.

---

[2] The first claim argues that his due process and equal protection rights were violated when the trial court failed to protect him from the prosecution's misuse of error coram nobis to procure Mickels's testimony.

[3] The sixth claim argues that his arrest was unlawful due to lack of evidence.

### III.      Identification

Petitioner argues that his identification was unnecessarily suggestive because he was not identified prior to his probation revocation hearing.  This argument was presented in his Rule 37 petition, but it was rejected because Petitioner failed to cite any authority or facts to support his claim.   The dismissal was warranted given Petitioner's conclusory assertion that in-court identification is a per se violation of due process if no pre-trial identification took place first. *See, e.g.*, *McDonald v. Bowersox*, 101 F.3d 588, 596 n.7 (8th Cir. 1996) ("On their face, [petitioner's] bare assertions have failed to state a cognizable . . . claim entitling him to habeas relief."). Petitioner's federal habeas petition essentially makes the same argument, except he now argues that the bank employees' testimony at his parole revocation hearing rendered their identifications unnecessarily suggestive because they heard McClendon's testimony regarding Petitioner's admission of guilt prior to identification.  Even if it is assumed arguendo that this claim was properly presented to the state courts, it still cannot succeed.

Federal courts may only overturn a state adjudication through habeas if it resulted in a decision that was 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or 2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law if it reaches a conclusion opposite that of the Supreme Court on a question of law, or reaches a decision contrary to the Supreme Court on materially indistinguishable facts." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (citing *Wiliams v. Taylor*, 529 U.S. 362, 405 (2000)).  "A state court decision involves an 'unreasonable application' when it identifies the correct legal

rule, but unreasonably applies it to the facts. 'A state court's application of clearly established federal law must be objectively *unreasonable*, not merely incorrect, to warrant the granting of a writ of habeas corpus.'" *Id.* (citing *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011)). A state court's "determination of a factual issue . . . shall be presumed to be correct," and petitioners bear "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e)(1).

In-court identifications such as these are fairly common, and the Court has specifically avoided adopting any per se exclusionary rules in this area (such as the one Petitioner appeared to argue for at the state level). *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). Moreover, the state court's denial was not contrary to clearly established law because the identifiction was not unnecessarily suggestive and was reliable under the totality of the circumstances. *See Manson v. Brathwaite*, 432 U.S. 98, 113 (1977); *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

## IV.  Requests for Counsel

Petitioner alleges that he requested counsel after his arrest on December 19, 2006, but did not receive permanent counsel until September 2007. He contends that evidence and witnesses were lost during this time and that he suffered prejudice as a result. As noted above, notice pleading is insufficient in habeas cases, and Petitioner has failed to indicate what evidence or which witnesses were lost. He does not allege that he made any statements without the presence of counsel or that any other prejudice resulted from the alleged deprivation of counsel. He acknowledges that he was represented by the public defender's office and that an attorney was present for all proceedings. It appears that Petitioner was represented by the public defender's office from March 26, 2007, through February 2008. He then spit on his counsel and the office was relieved. David Cannon represented Petitioner for the remainder of his trial and direct

review process.   Thus, Petitioner's claim is denied because it is conclusory, speculative, and without merit.

## V.        Motion to Suppress

A motion seeking to suppress Mickles's testimony was filed at trial, but it was denied. The motion argued that her testimony was inadmissible because it was only being given in exchange for a writ of error coram nobis that would reduce her sentence by twelve years. Petitioner now argues that it was an abuse of the trial judge's discretion to deny that motion.

This argument appears to be based entirely on state law and is not cognizable on federal habeas review.   Federal habeas relief requires petitioners to show they are "in custody in violation of the *Constitution or laws or treaties of the United States*." 28 U.S.C. § 2241(c)(3) (emphasis added).   In any event, it is quite common for testimony to be given in exchange for reductions in sentences, and Petitioner's counsel cross-examined Mickles regarding bias arising from the deal she had struck.   The Court also notes that the Arkansas Supreme Court found that the trial court's denial was appropriate.   Thus, Petitioner's claim is not cognizable and without merit.

## VI.       Speedy Trial

Petitioner argues that he was denied the right to a speedy trial because his trial took place 20 months after his arrest.   This claim does not reference any constitutional or federal law, and it appears to be based solely on the trial court's alleged violation of Arkansas's speedy trial rules. "Generally, a claim that a state has violated its own speedy trial rules presents a question of state law for determination by state courts." *Wallace v. Lockhart*, 701 F.2d 719, 729 (8th Cir. 1983) (citing *Powers v. White*, 680 F.2d 51, 52 (8th Cir. 1982)).   "Violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on habeas petition."

*Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Petitioner also failed to present this as a federal issue when he made the argument at the state level. "[W]e traditionally demand that a habeas petitioner have presented 'the same legal theories and factual bases to the state courts.'" *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995) (quoting *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir. 1994)). "At minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law." *Id.* (citing *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir. 1994)); *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (holding that state courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution," and that this has not been done when different standards are used by the state for the issue presented); *Carney v. Fabian*, 487 F.3d 1094, 1096-97 (8th Cir. 2007) (holding that prisoner did not satisfy presentment requirement because he "did not specifically assert a due process violation, refer to the United States Constitution, or cite a relevant federal constitutional case"); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991) ("Explicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court.").

Finally, it appears that Petitioner's speedy trial clock was appropriately tolled and that there were no constitutional violations. He has failed to allege anything that would indicate otherwise, so his claim is without merit.

VII.   **Ineffective Assistance of Counsel**

Petitioner alleges that counsel was ineffective for failing to: 1) present two letters from Mickles that indicated she knew nothing about the crime Petitioner was convicted of, 2) investigate his alibi, 3) go to the crime scene, 4) interview and call witnesses that Petitioner had identified, 5) interview the State's witnesses, 6) object to the State's witness identifications, 7) request that the incriminating letter be reviewed and authenticated by a handwriting expert, 8) request curative instructions after Mickles referenced Petitioner's drug use, 9) file a writ of prohibition challenging the use of a writ of error coram nobis to reduce Mickles's sentence, and 10) investigate and develop evidence implicating another suspect, Jeffery Keyes.

Even if it is assumed arguendo that he suffered sufficient prejudice to excuse his defaults, Petitioner's ineffective assistance claims fail because they are without merit.  The trial court correctly identified *Strickland v. Washington*, 466 U.S. 668, 687 (1984), as the appropriate rule for reviewing Petitioner's ineffective assistance claims, so Petitioner must demonstrate that the court's application of *Strickland* was objectively unreasonable. *Jackson*, 651 F.3d at 925.

In order to succeed on his ineffective assistance of counsel claims, Petitioner must have shown both that 1) his counsel provided deficient assistance and 2) he was prejudiced as a result. *Strickland*, 466 U.S. at 687.  To establish deficient performance, he must have demonstrated that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  This means showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Courts must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689.  With respect to prejudice, Petitioner must have demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

An ineffective assistance claim in the federal habeas context is doubly difficult because courts must "take a 'highly deferential' look at counsel's performance through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Petitioner's first argument fails because he has failed to produce the two letters from Mickles or explain why he has been unable to produce them.  The Court cannot rely on mere allegations.   The letters were not submitted at the state level either, so Petitioner is asking the Court to consider new evidence, which is strongly discouraged under AEDPA. *See, e.g., Cullen*, 131 S. Ct. at 1392 ("At a minimum, § 2254(e)(2) still restricts their discretion in claims that were not adjudicated on the merits in state court. Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so.").

Given the amount of evidence that was presented at trial, it is unlikely that Petitioner could have satisfied his burden regarding prejudice even if he had produced these letters at both the federal and state levels. *See United States v. Frady*, 456 U.S. 152, 172 (1982) (finding the overwhelming amount of evidence against the petitioner prevented a successful assertion of prejudice).  The prosecution presented two eyewitnesses that identified Petitioner and an inmate who testified that Petitioner confessed to the crime.  Many of the details of this confession were independently corroborated, and Petitioner lied about his identity when he was pulled over by

14

police in Illinois.  The prosecution's case did not require Mickles's testimony, and there are many legitimate reasons Petitioner's counsel may have chosen not to introduce these letters.

Petitioner's claim regarding counsel's alleged failure to investigate his alibi fails for similar reasons.  His argument is merely speculation that unnamed individuals could have corroborated his alibi and that surveillance tapes might have recorded him at a liquor store and at a Walmart.  He has also failed to include a statement from the one person he does name, Kimberly Wallace, to confirm that they were arguing at a liquor store around that time and that she had been willing to testify at Petitioner's trial.  Such evidence was not presented at the state level either, but, even if he had, it would be unlikely to pass AEDPA's strict new evidence standards.

It is also apparent that counsel did perform at least some investigation of his alibi because he called Mark Mosley as a witness to corroborate that alibi.  Moreover, the date in question was November 24, 2006, and he was not arrested by Arkansas authorities until December 19, 2006.  Counsel was not appointed until March 26, 2007, and it seems overly speculative to assume that these stores would still have had the surveillance tapes from November 24, 2006, at that point since there was no apparent reason to keep them.  It does not appear that Petitioner filed a motion requesting counsel during that gap in time or that he took any actions to obtain the footage or prevent the stores from disposing of it.

Petitioner's third argument is without merit.  Counsel's failure to visit the crime scene does not mean that he would have been unable to estimate the travel time from Walmart to the crime scene.  Even if his attorney had visited the crime scene, the jury would not have done so, and the jury would still have had to rely on an estimated travel time when performing this calculation.  Given the variability of times it takes to travel between two distances, it seems that

an estimate provided by a mapping program would have been more credible than anything his lawyer would have produced.  Thus, his attorney's decision not to visit the ATM nearly a year and a half after the crime is of no consequence.  Further, this argument relies on the assumption that Petitioner's alibi is true, but it was not proven and the evidence against him was overwhelming.

Petitioner's fourth argument is also without merit.  The decision not to call witnesses is one involving trial strategy, and several witnesses were called by the defense.  One of those witnesses provided alibi testimony and another testified that he recognized the perpetrator of the crime as being Jeffery Keyes.  Given the credibility of the witnesses that were called, the Court can reasonably presume the reason his counsel chose not to call them was strategically made rather than a result of incompetence.  One of the witnesses named by Petitioner, Roxanne Walker, was apparently present at the trial and testified at the sentencing phase, so counsel's decision not to put her on the stand during the trial was likely a conscious choice.

Petitioner's fifth argument speculates that if trial counsel had interviewed the two bank employees prior to trial, counsel would have discovered that the two employees had not previously identified Petitioner via photos or a lineup and that this would have allowed him to file a motion to suppress their testimony.  First, counsel cross-examined the employees regarding their lack of pretrial identification, so it is not as if he was unaware of this detail.  Second, the Court has already explained why lack of pretrial identification is not improper per se.

His sixth argument contends that his lawyer's failure to object to the in-court identification amounted to ineffectiveness, and it can be disposed of for the same reasons his fifth argument was.

Seventh, Petitioner contends counsel was ineffective for failing to get Mickles's letter authenticated by a handwriting expert and not having a video expert prove he was not the man in the ATM's image.  He essentially contends that the letter was altered from its original form to be more incriminating, but he has failed to establish that the results of either of these measures would have been favorable to his case.  It is also unclear that the ATM picture could have been enhanced any further than what the police had accomplished.  The man in the ATM image was unrecognizable, so it was not essential to the prosecution's case and neither was the letter.  As previously mentioned, the case against Petitioner was overwhelming, and he has failed to establish sufficient prejudice

Eighth, Petitioner argues counsel was ineffective for failing to request or accept curative instructions after Mickles referenced Petitioner's drug use in her testimony.  Counsel objected to her testimony and vehemently sought a mistrial.  He also stated that he would object to curative instructions because this was the third instance where a prosecution witness referenced prior bad acts.  Thus, it is clear that this was trial strategy.  It was a reasonable choice under the circumstances because a curative instruction would have called more attention to the problem.

Ninth, Petitioner contends counsel was ineffective for failing to file a motion objecting to the prosecution's use of writ of error coram nobis with the Arkansas Supreme Court.  This is a question that involves state law and the Arkansas Court of Appeals found that he would not have had standing to file such a motion.  Counsel is not ineffective for failing to bring motions that would be futile, and the Court notes that trial counsel did file a motion to suppress her testimony based on the arrangement made by the prosecution.

Although this was apparently an improper use of the writ of error coram nobis under Arkansas law, the Arkansas Supreme Court's majority opinion indicates there is little more Petitioner's counsel could have done. *Burks*, 2009 Ark. 598, at *2 -*5, 359 S.W.3d 402, 405-06.

Finally, Petitioner argues that counsel was ineffective for failing to investigate whether Jeffrey Keyes was the perpetrator of the crime.  This argument merely consists of a litany of unsupported allegations regarding Keyes, and it ignores the fact that counsel had Terry Sherrer testify that Keyes was the man in the ATM photograph.  This is plainly insufficient, and the bank employees testified that Keyes was not the man who robbed them.

**VIII.      Prosecutorial Misconduct**

Petitioner's final argument contends that the prosecutor engaged in misconduct by illegally using the writ of error coram nobis to strike a deal with Mickles and by knowingly using tainted evidence (the letter to Mickles).  This argument is essentially a restatement of Petitioner's previous arguments and it can be rejected for the same reasons.

The Court is certainly troubled by the prosecutor's and trial judge's disregard of Arkansas law when achieving the reduction in Mickles's sentence through coram nobis, but the Court is unaware of any reason that her testimony should have been suppressed.  Petitioner would not appear to have standing to challenge the arrangement between Mickles and the prosecution, and the sentence reduction used to rewarded her testimony did not result from a violation of any of Petitioner's rights.

The Court also agrees with the Arkansas Supreme Court's analysis regarding prejudice. *Burks*, 2009 Ark. 598. With respect to Petitioner, the illegal means the prosecution used to provide the consideration for Mickles's testimony only goes to her motivation for testifying against him.  It is essentially identical to a situation where the prosecution offers a favorable plea

bargain, and cross-examination is the appropriate remedy for impeaching the credibility of such witnesses. The fact that Mickles was receiving a large reduction in her sentence was clearly established by both the prosecution and defense, so Petitioner did not suffer any constitutional deprivations as the result of the prosecutor's conduct. Mickles's testimony could have also been secured through the use of a subpoena, and it is only speculation that she would have testified differently in that scenario.

There is nothing to indicate the prosecution knowingly submitted false evidence when it introduced the letter. Petitioner doesn't deny sending the letter, and DNA testing revealed that he licked the envelope it was sent in. The prosecution's decision not to have a handwriting expert analyze the letter does not prove anything because it was certainly reasonable for the prosecution to feel that such analysis was unnecessary and a waste of resources. Such a decision was even more understandable given the amount of evidence presented because this meant that neither Mickles's testimony nor the letter were essential to his conviction.

## IX.     Requested Amendments

Petitioner has requested leave to amend his petition to add the following claims: 1) the prosecutor committed a *Brady* violation by failing to disclose that one of the bank employees identified a different person during a photograph lineup and the other failed to identify Petitioner and also by failing to correct their untruthful testimony regarding identification, 2) the prosecution committed a *Brady* violation by failing to disclose that codefendant Stella Hill said that Petitioner was not with her at the time of the robbery after her arrest, 3) his procedural due process rights were violated because he was not allowed to make a plea, 4) his due process rights were violated because he was represented by Sandi Cordi at several pretrial hearings despite also

being Mickles's lawyer, and 5) he is actually innocent of the crimes for which he was convicted. Petitioner's request is denied because his proposed amendments would be futile.

### A. *Brady* Violations

Petitioner's two *Brady* arguments are procedurally defaulted and without merit. Petitioner's first argument concerning identification was not fairly presented to the state courts. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch*, 616 at 758.

Petitioner did not raise either of these arguments during his direct appeal. Rather, the first claim was raised in a petition for writ of error coram nobis that was denied on May 2, 2013, *Burks v. State*, 2013 Ark. 188, and the Arkansas Supreme Court specifically found that Petitioner was not diligent in bringing his claim. His second argument was only presented in a writ of error coram nobis that was denied without comment on July 25, 2013. This was not one full round of the state's review process and his claims are defaulted.

The Court also notes that Petitioner did not explain how he discovered that the employees had participated in a lineup at the state level. He has now provided an affidavit from Roxanne Walker that alleges she overheard the two employees discussing the lineup while they were all waiting to testify at Petitioner's probation revocation hearing. Even if the Court were to assume her allegations are true, Petitioner has failed to satisfy the requirements of 28 U.S.C. § 2254(e). Given the fact that Walker alleges that she heard this discussion roughly a month before Petitioner's trial, Petitioner cannot demonstrate that the factual predicate for his claim "could not have been previously discovered through the exercise of due diligence." *Id.* at (e)(2)(A)(ii). The

new evidence is also insufficient to satisfy the requirements of § 2254(e)(2)(B) in light of the other evidence that was presented at trial. Petitioner's conclusory allegations are insufficient grounds to warrant federal habeas relief.

### B.  Due Process Violations

Petitioner's due process arguments are also procedurally defaulted and without merit.  He acknowledges that he failed to exhaust his state remedies but argues that his attorney's ineffectiveness caused the default because counsel failed to preserve these issues for direct appeal.  This is insufficient to establish cause and prejudice to excuse his defaults, and to the extent he also wishes to raise ineffective assistance claims, those claims are without merit.

Although Petitioner does appear to be correct regarding the errors with his plea and arraignment, there does not seem to be any resulting prejudice.  Petitioner does not allege that he would have pleaded any other way than what was recorded or that he was unaware of what the charges against him were.  Thus, there does not appear to be any basis for relief.  Petitioner's argument regarding Sandi Cordi's conflict of interest is also without merit.  She did not represent him at trial, and Petitioner does not explain how he was prejudiced.

### C.  Actual Innocence

Lastly, Petitioner alleges that he is actually innocent.  It is unclear whether there is a freestanding actual-innocence claim, but even if there is, Petitioner has failed to establish his innocence. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). His unsupported allegation of innocence cannot excuse his procedural defaults or serve as an independent basis for federal habeas relief.

**Conclusion**

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 2) be, and it is hereby, dismissed, with prejudice.  The relief prayed for is DENIED.

Petitioner's Motion for Leave to Amend is also DENIED. (Doc. No. 11).

The Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2).

SO ORDERED this 17th day of July, 2014.

_____
United States Magistrate Judge